# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Joseph Pellitteri and Lori Reinhardt, on behalf of themselves and others similarly situated, | ) ) ) | Case No. 2:10-cv-769-PMD |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CLASS-ACTION COMPLAINT |
| vs. | ) | (jury trial demanded) |
| | ) | |
| Cellco Partnership, d/b/a Verizon Wireless, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## INTRODUCTION

Joseph Pellitteri and Lori Reinhardt, on behalf of themselves and others similarly situated, bring this action to obtain damages from and injunctive relief against Verizon for charging them and class members for data service when, according to Verizon's records, they never accessed the Internet or were never directed beyond their default Verizon Wireless Mobile Web homepages.

## PARTIES

1.     Plaintiff, Joseph Pellitteri, is a South Carolina resident.  During the class period, Defendant charged Plaintiff and Plaintiff paid Defendant for data service even though Plaintiff never accessed the Internet or was never directed beyond his default Verizon Wireless Mobile Web homepage.

2.     Plaintiff, Lori Reinhardt, is a South Carolina resident.  During the class period, Defendant charged Plaintiff and Plaintiff paid Defendant for data service even though Plaintiff never accessed the Internet or was never directed beyond her default Verizon Wireless Mobile Web homepage.

3.      Defendant, Cellco Partnership, d/b/a Verizon Wireless ("Verizon"), is a Delaware general partnership with its principal place of business located at 1 Verizon Way, Basking Ridge, NJ 07920.

## JURISDICTION AND VENUE

4.      This Court has diversity subject-matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, which amends 28 U.S.C. § 1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of a class of Plaintiff is a citizen of a State different from any defendant" and the aggregated amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs."

5.      This Court has personal jurisdiction over the parties because Plaintiffs submit to the jurisdiction of the Court, and because Verizon transacts business in; is found within; and has agents in this District, and a substantial part of the events giving rise to Plaintiffs' claims arose in this District.

6.      Venue exists in this Court under 15 U.S.C. § 22 and 28 U.S.C. § 1391 because Verizon transacts business in; is found within; and has agents in this District, and a substantial part of the events giving rise to Plaintiffs' claims arose in this District.

## FACTUAL ALLEGATIONS

*Wireless phones and data service*

7.      Two types of wireless telephones exist: Smartphones and non-smartphones.

8.      Smartphones (like the Blackberry, iPhone, Droid, and Palm Pre) offer advanced capabilities often with PC-like functionality and provide users features like e-mail, full Internet-browsing access, and sometimes built-in full keyboards or external USB keyboards.

9.      Non-smartphones (like the LG Chocolate Touch, LG enV3, LG enV Touch, LG VX8360, Motorola Entice, Motorola Rival, Samsung Rogue, Samsung Alias2, and Nokia Twist) have HTML browsers but only marginally support data services, offering limited-content Internet

browsing and virtually no email capabilities.  Non-smartphones are used primarily for placing and receiving phone calls and not for conducting activities requiring significant megabytes of data service.

10.    In addition to the price wireless customers pay for monthly calling plans, Verizon smartphone customers must purchase a "data plan" that provides different amounts of email usage and web browsing capabilities depending on the data plan's price.  For instance, in addition to the price of Verizon Blackberry customers' monthly calling plans, Blackberry customers must also purchase Verizon's $29.99/month data plan for unlimited email and web browsing.

11.    With respect to Verizon's non-smartphone customers, Verizon recently implemented a similar, mandatory $9.99/month data-service charge.  But not only does Verizon impose this $9.99/month charge on new, non-smartphone customers, Verizon also requires *current* non-smartphone customers who are *already* under contract to pay $9.99/month after merely replacing their wireless handsets yet never adjusting their contracts.  Verizon's 500% increase of its non-smartphone customers' unwanted and never-incurred $1.99 data charges provides these customers with 25 megabytes of data service.  But as this lawsuit demonstrates, these customers never used Verizon's data service the first place.

***Verizon's phantom data-service charges***

12.    By their design, non-smartphones are not intended to provide users full Internet and email capabilities.

13.    Consequently, non-smartphone users do not require anywhere near the data usage that smartphone users require.  As a result, Verizon does not charge non-smartphone users for data service anywhere near the degree to which Verizon charges smartphone users for data service.

14.    To protect non-smartphone users from inadvertent data charges, Verizon asserts that it does not charge them when their web browsers merely open to their default Verizon Wireless Mobile Web homepage (e.g., "My Verizon," the on-line customer-account portal).  According to

Verizon, to incur data charges a non-smartphone user must instead navigate beyond this homepage.

15.    Nonetheless, Verizon charges its non-smartphone users for data services when these users don't navigate beyond their My Verizon homepage.   In particular, Verizon charges non-smartphone customers for unaccessed data service in the following situations:   (a) where the customer merely launches the Internet browser and lands on the default Verizon Wireless Mobile Web homepage, which is the default setting; (b) where the customer never even launches the Internet browser; (c) where the customer previously took the precaution of placing data-service block, making it impossible to access the Internet; and (d) where the customer replaces his or her wireless phone but does not renew, extend, or otherwise adjust his or her wireless-phone contract.

16.    In her August 24, 2009 *Money Matters* column, *The Cleveland Plain Dealer's* Teresa Murray described these phantom-data-charge situations:

> At a minimum, thousands of customers apparently have been charged $1.99 per month for Internet "data usage" even though they had not tried to go online.  In some cases, customers were charged when their phones were off, the batteries were dead, the phone's Internet access was blocked or even when the phones didn't have the software to go online.

17.    In this same article, Ms. Murray recounted her conversation with Verizon's region president, Robert Tang, who acknowledged these problems and admitted that Verizon "believe[s] they're nationwide."

18.    In his November 12, 2009 column, *The New York Times'* David Pogue also reported on this issue, relating a Verizon insider's story of how Verizon is conducting its phantom-data-charge scheme:

> The phone is designed in such a way that you can almost never avoid getting $1.99 charge on the bill.  Around the OK button on a typical flip phone are the up, down, left, right arrows.  If you open the flip and accidentally press the up arrow key, you see that the phone starts to connect to the web.  So you hit END right away. Well, too late.  You will be charged $1.99 for that 0.02 kilobytes of data.  NOT COOL.  I've had phones for years, and I sometimes do that mistake to this day, as I'm sure you have. . . .

Every month, the 87 million customers will accidentally hit that key a few times a month!  That's over $300 million per month in data revenue off a simple mistake!

Our marketing, billing, and technical departments are all aware of this.  But they have failed to do anything about it—and why?  Because if you get 87 million customers to pay $1.99, why stop this revenue?  Customer Service might credit you if you call and complain, but this practice is just not right.

Now, you can ask to have this feature blocked.  But even then, if you one of those buttons by accident, your phone transmits data; you get a message that you cannot use the service because it's blocked–BUT you just used 0.06 kilobytes of data to get that message, so you are now charged $1.99 again!

They have started training us reps that too many data blocks are being put on accounts now; they're actually making us take classes called Alternatives to Data Blocks.  They do not want all the blocks, because 40% of Verizon's revenue now comes from data use.  I just know there are millions of people out there that don't even notice this $1.99 on the bill.

19.    Sparked into action by Mr. Pogue's report, on December 4, 2009, the FCC wrote to

Verizon requesting, among other things, information about Verizon's phantom data-service charges:

### Mobile Web Charge

In light of a recent *New York Times* article suggesting that customers may be charged $1.99 for inadvertently accessing Verizon Wireless's Mobile Web, we would like to better understand the terms and conditions of such access.

8.    When does Verizon Wireless charge usage fees for access to Verizon Mobile Web?  In particular, is there a minimum data amount or level of access that triggers charges, and if so, what is that amount or level? Which phones sold by Verizon have individual keys pre-programmed to provide for one-press access to various Mobile Web services?  Is it correct that customers are charged for minimal, accidental usage by customers using these phones?

9.    Can a customer re-program keys that provide for one-press access to various Mobile Web services to disable that function?  If so, how can a customer do so, and how does Verizon inform consumers how to re-program these keys?  If not, how does Verizon inform consumers that these keys cannot be reprogrammed, and that consumers may be charged for pressing them accidentally? The recent article also suggested that, even if a consumer asks to have the Mobile Web feature turned off, charges are incurred for transmission of a blocking notification.  Is this correct?  If so, are consumers informed that they may incur charges even after turning off the feature?

20.    Verizon's December 18, 2009 response denied some of the FCC's concerns and ignored others, instead merely describing the various technical aspects of data charges and configurations of wireless phones:

> **Response [to 8]:**  Usage fees for Verizon Wireless' mobile Internet service, Mobile Web, apply when a customer launches the Internet browser and then navigates away from the default Mobile Web homepage to sites other than a Verizon Wireless customer care site (*e.g.*, My Verizon, the online customer account portal).  Usage fees are not charged when a customer simply launches the Internet browser and lands on the Verizon Wireless Mobile Web homepage, which is the default setting.
>
> Usage is measured by increments of megabytes and is charged based on the data plan to which the customer subscribes.  Customers who do not subscribe to prepaid or unlimited transport bundles are charged $1.99 for each megabyte, or fraction thereof, of data usage per month.  Most devices sold today have a default setting so that when the Internet browser is activated it will immediately link to the Mobile Web homepage (which, as indicated above, would not cause a customer to incur a fee).  Where available, this link is usually on the main menu of the device for convenience since it is a commonly used application, or is accessed by pressing a "fourway" navigation key on the device.  The location of the browser link has varied over the past ten years and on hundreds of Mobile Web capable devices, and is not always configurable from the main menu.
>
> As noted above, in order to protect customers from minimal, accidental usage charges, Verizon Wireless does not charge users when the browser is launched, and opens to the Verizon Wireless Mobile Web homepage.  If the browsing session ends there without the customer navigating to another webpage, the customer will not incur charges for Mobile Web browsing.
>
> Verizon Wireless strives to ensure that customers are not billed for minimal accidental data usage charges.  If a customer believes that he has been charged for such minimal accidental usage, he should call Customer Care, explain the circumstances, and request a credit.  Customer Care representatives are authorized to credit the account, and also to explain to the customer how to avoid recurrence of accidental usage charges.
>
> **Response [to 9]:**  Certain devices can be re-programmed to remove (or add) the browser link from the main menu or change the destination for the "four-way" navigation key, but this option is not available on all Mobile Web capable devices.
>
> However, most devices include a feature that permits customers to lock their screens to avoid accidental dialing or application launches. Use of this feature would prevent the browser link from being triggered. Each mobile device comes with a user's manual that identifies the Screen/Phone lock feature in

the index, and provides instructions on how to implement it. Also, Verizon Wireless has a technical support phone number and technicians available in each of its stores to assist customers in using this feature at no charge. If the device permits reprogramming by the user, the user's manual would describe the procedure.

Verizon Wireless also offers customers the ability to apply data access blocks to their account for either all data access or specifically to Mobile Web. A data block can be applied through Customer Care and at point of sale. In addition, Mobile Web block can be applied on-line at the My Verizon website.

Verizon Wireless does not charge for Mobile Web blocking notifications. If the referenced article suggested that there is a charge, it was inaccurate.

21.    In Mr. Pogue's December 21, 2009 column, he recognized the "outrageous[ness]" of Verizon's response [b]ecause basically it denies everything. It says, in essence, . . . 'We don't charge those $2 accidental-Internet fees. You must be mistaken." But the "nationwide" nature of this problem, as admitted by Mr. Tang and observed by Ms. Murray's many readers, confirms otherwise.

22.    And even more recently, Verizon unilaterally imposed a mandatory $9.99/month data-service charge for current non-smartphone users who merely replace their wireless handsets without adjusting their contracts. *See* supra ¶10.

***Plaintiff's phantom data-service experience and charges***

23.    Plaintiffs have a current Verizon contract that includes multiple wireless-telephone lines.

24.    Plaintiffs' calling plans as set forth in their Verizon contracts do not include a data-service package for any of these lines.

25.    Despite Plaintiffs never being directed beyond their default Verizon Wireless Mobile Web homepage, which fact Plaintiffs can confirm through Verizon's records, Verizon charged Plaintiffs' line for data service.

26.    As current Verizon non-smartphone customers, Plaintiffs are also at imminent risk of irreparable harm by Verizon imposing on them a $9.99/month data-service charge in the event they replace their wireless handset.

## CLASS-ACTION ALLEGATIONS

27.    Plaintiffs bring this lawsuit on behalf of the following classes under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> ### *Rule 23(b)(2) class for injunctive or declaratory relief*
> All Verizon non-smartphone customers in South Carolina.
>
> ### *Rule 23(b)(3) class for money damages*
> All Verizon current or former customers in South Carolina without data plans who Verizon charged for data service but who, according to Verizon's records, either never accessed the Internet or were never directed beyond their default Verizon Wireless Mobile Web homepage.
>
> Excluded from Plaintiff's classes are (a) Verizon and any entity in which Verizon has a controlling interest; (b) Verizon's employees, officers, directors, agents, and representatives and their family members; (c) class counsel, employees of class counsels' firms, and class counsels' immediate family members; and (d) the presiding judge and/or magistrate judge and any of their immediate family members.

28.    Plaintiffs are Verizon non-smartphone customers.  Therefore, they are Rule 23(b)(2) class members.

29.    Verizon charged Plaintiffs for data service even though they never accessed the Internet or if they did, were never directed beyond their default Verizon Wireless Mobile Web homepage.  Therefore, Plaintiffs are Rule 23(b)(3) class members.

30.    Plaintiffs can identify all other class members from Verizon's records.

31.    Plaintiffs do not know the exact size of the classes since this information is in Verizon's exclusive control.  But based on the nature of the trade and commerce involved, Plaintiffs believe that the class numbers in the thousands and that the respective class members are dispersed throughout the U.S. Therefore, joinder of all class members would be impracticable, and class treatment is the superior method for fairly and efficiently adjudicating this controversy.

32.     Plaintiffs' claims are typical of other class members' claims because (1) Plaintiffs and class members are at imminent risk of irreparable harm by Verizon imposing on them a $9.99/month data-service charge in the event they replace their wireless handsets, and (2) Plaintiffs and class members were all injured through Verizon's uniform misconduct and paid for data service they never incurred and/or contracted to pay.  Accordingly, by proving their own claims Plaintiffs will necessarily prove the other class members' claims.

33.     Common legal and factual questions predominately exist within the classes, including but not limited to the following:

a.     Whether Verizon had contracts with Plaintiffs and the Rule 23(b)(2) and (3) class members to provide wireless service for a monthly sum;

b.     Whether Plaintiffs and the Rule 23 (b)(2) class members are at imminent risk of irreparable harm by Verizon imposing on them a $9.99/month data-service charge in the event they replace their wireless handsets;

c.     Whether Plaintiffs and the Rule 23(b)(2) class members are entitled a declaration that establishes their rights and Verizon's duties with respect to Verizon's data-service billing practices;

d.     Whether Plaintiffs' and the Rule 23(b)(2) and (3) class members' contracts provided for data service;

e.     Whether Plaintiffs' and the Rule 23(b)(2) and (3) class members' contracts allow Verizon unilaterally to add charges for data service;

f.     Where these contracts do not provide for data service, whether Verizon violated the Federal Communications Act, 47 U.S.C. § 201 *et seq.*, by charging for data service for which Plaintiffs and the Rule 23(b)(3) class members never contracted;

g.     Where these contracts do not provide for data service, whether Verizon charged Plaintiffs and the Rule 23 (b)(3) class members for data service when, according to Verizon's records, Plaintiffs and the class members never accessed the Internet or if so were never directed beyond their default Verizon Wireless Mobile Web homepage;

h.     Whether Verizon breached Plaintiffs' and the Rule 23(b)(3) class members' contracts by charging for data service for which Plaintiffs and the Rule 23(b)(3) class members never contracted;

i.    Whether Verizon breached Plaintiffs' and the Rule 23(b)(3) class members' contracts by charging for data service when, according to Verizon's records, Plaintiffs and the class members never accessed the Internet nor were ever directed beyond their default Verizon Wireless Mobile Web homepage;

j.    Whether Verizon was unjustly enriched by charging Plaintiffs and the Rule 23(b)(3) class members for data service when, according to Verizon's records, Plaintiffs and the class members never accessed the Internet nor were ever directed beyond default Verizon Wireless Mobile Web homepage; and

k.    Whether Verizon's conduct proximately caused injury to Plaintiffs and the Rule 23(b)(3) class members, and if so, the appropriate classwide measure of Rule 23(b)(3) class members' damages or equitable relief.

34.    Plaintiffs can and will fairly and adequately represent and protect the class members' interests and have no interests that conflict with or are antagonistic to these class members' interests.  Moreover, Plaintiffs' attorneys are experienced and competent in complex, class-action litigation.

35.    Class certification is the superior procedural vehicle for the fair and efficient adjudication of the claims asserted because:

a.    Common questions of law and fact overwhelmingly predominate over any individual questions that exist within the classes and, consequently, enormous economies to the Court and parties exist in litigating the common issues on a class-wide basis instead of on a repetitive individual basis;

b.    Each class member's damage, equitable, and injunctive claim is too small to make individual litigation an economically viable alternative, and few class members have any interest in individually controlling the prosecution of separate actions;

c.    Class treatment is required for optimal deterrence and compensation and for limiting the Court-awarded, reasonable legal expenses incurred by class members; and

d.    Despite the relatively small size of each class member's claim, the aggregate volume of their claims, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable class counsel to litigate this case as a class action on a cost-effective basis, especially when compared with repetitive individual litigation, and no unusual difficulties are likely to be encountered in this class

action's management in that all legal and factual questions are common to the classes.

36.     Class certification is appropriate under Federal Rule 23(b)(2) because Verizon has acted on grounds generally applicable to Plaintiffs and the Rule 23(b)(2) class members all of whom are at imminent risk of irreparable harm by Verizon imposing on them a $9.99/month data-service charge in the event they replace their wireless handsets and all of whom are entitled a declaration that establishes their rights and Verizon's duties with respect to Verizon's data-service billing practices.

### COUNT I
**Violation of Federal Communications Act, 47 U.S.C. § 201 *et seq.*
(Applicable to the Rule 23(b)(3) class)**

37.     Unjust or unreasonable billing practices constitute a violation of 47 U.S.C. § 201 *et seq.,* which in states in relevant part:

> All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful . . . .

38.     Verizon's practice of charging Plaintiffs and the class members for data service when they never accessed the Internet or were never directed beyond their default Verizon Wireless Mobile Web homepage was unjust and unreasonable and violated 47 U.S.C. § 201 *et seq.*

39.     Under 47 U.S.C. § 206, anyone harmed by a carrier's violation of 47 U.S.C. § 201(b) can bring a claim for damages:

> In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this Act prohibited or declared to be unlawful . . . such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provision of this Act, together with a reasonable counsel or attorney's fee . . .

40.     Under 47 U.S.C. § 206, Plaintiffs and the class members are entitled to damages and attorneys' fees.

## COUNT II
### Breach of Contract Under South Carolina Law
### (Applicable to the Rule 23(b)(3) class)

41.    Verizon offered to provide wireless, non-smartphone telephone service to Plaintiffs in exchange for Plaintiffs' agreement to pay Verizon a fixed, monthly rate, which offer and acceptance created a binding contract between Plaintiffs and Verizon, respectively, based on good and valid, mutual consideration.

42.    Plaintiffs' contracts with Verizon do not include data service, meaning Verizon may not charge Plaintiffs for data service unless he uses data service.

43.    Despite Plaintiffs' contracts not allowing Verizon to charge them for data service unless used, Verizon has charged Plaintiffs for data service even though, according to Verizon's records, they never accessed the Internet nor browsed beyond their default Verizon Wireless Mobile Web homepage.

44.    Verizon's data service charges to Plaintiffs breached Verizon's contracts with them since these contracts did not permit such charges when Plaintiffs did not incur them.

45.    As a direct and proximate result of Verizon's breach of Plaintiffs' contract, Plaintiffs were injured by paying for data service even though, according to Verizon's records, they never accessed the Internet nor browsed beyond their default Verizon Wireless Mobile Web homepage.

## COUNT III
### Unjust Enrichment Under South Carolina Law
### (Applicable to the Rule 23(b)(3) class)

46.    As the result of Verizon charging Plaintiffs for data service that, according to Verizon's records, they never accessed, Plaintiffs conferred a benefit upon Verizon, and Verizon received and retained this benefit under such circumstances that it would be inequitable and unconscionable to permit Verizon to retain this benefit without paying its reasonable value to Plaintiffs.

47.     As a direct and proximate result of Verizon's unjust enrichment, Plaintiffs and the class members suffered injury and seek an order directing Verizon to return to them the amount each of them improperly paid to Verizon, plus interest.

## COUNT IV
### Request for Injunctive Relief Under South Carolina Law
### (Applicable to the Rule 23(b)(2) class)

48.     Injunctive relief is appropriate when it appears with reasonable certainty that a party to an action will continue or repeat its wrongful acts.

49.     Enjoining Verizon from imposing its imminent $9.99/month data charge on Plaintiffs and the Rule 23(b)(2) class members and from charging Plaintiffs and the Rule 23(b)(2) class members additional $1.99 charges for unaccessed data service is appropriate because Plaintiffs have established a reasonable likelihood of success on the merits; Plaintiffs will suffer irreparable harm without such an order; and the balance of the equities, including the public interest, weigh in favor of granting Plaintiffs' request for injunctive relief.

## COUNT V
### Request for Declaratory Relief Pursuant to the
### Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*
### (Applicable to the Rule 23(b)(2) class)

50.     Plaintiffs and the Rule 23(b)(2) class members contend that Verizon is engaging in illegal data-service billing practices; Verizon believes its illegal data-service billing practices are proper.

51.     As such, an actual controversy exists between Plaintiffs and the Rule 23(b)(2) class members and Verizon concerning the parties' rights and duties with respect to Verizon's data-service billing practices.

52.     The parties require this Court's declaration as to their respective rights; duties; and any other relevant legal relations, whether or not the parties could seek or are otherwise entitled to further relief.

## PRAYER FOR RELIEF

Plaintiffs request the following relief:

    a.    That this Court determine this action may be maintained as a class action under Federal Rules 23(b)(2) and (3) and certify Plaintiffs' proposed classes;

    b.    With respect to Count I, that this Court find Verizon violated the Federal Communications Act, 47 U.S.C. § 201, *et seq.*, as to Plaintiffs and the Rule 23(b)(3) class members;

    c.    With respect to Count II, that this Court find Verizon breached its contracts with Plaintiffs and the Rule 23(b)(3) class members and award damages appropriate to compensate Plaintiffs and the Rule 23(b)(3) class members;

    d.    With respect to Count III, that this Court determine Verizon was unjustly enriched by Plaintiffs and the Rule 23(b)(3) class members and that disgorgement on a collective basis is appropriate;

    e.    With respect to Count IV, that this Court enter an order enjoining Verizon from charging Plaintiffs and the Rule 23(b)(2) class members for data service that they neither access nor utilize;

    f.    With respect to Count V, that this Court enter an order in favor of Plaintiffs and the Rule 23(b)(2) class members declaring that Verizon engaged in illegal data-service billing practices;

    g.    That this Court enter an order awarding pre-judgment and post-judgment interest; and

    h.    That this Court enter an order awarding all other relief as it may deem just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury on their claims alleged.

Dated:  March 25, 2010

*(Signature page to follow)*

**THURMOND KIRCHNER TIMBES & YELVERTON, P.A.**

*/s/Jesse A. Kirchner*
Jesse A. Kirchner (Federal ID No.8067)
15 Middle Atlantic Wharf, Suite 101
Charleston, SC 29401
Telephone:     (843) 937-8000
Facsimile:     (843) 937-4200
Email:        jkirchner@tktlawfirm.com

*Local Counsel for:*

**REINHARDT WENDORF & BLANCHFIELD**
Garrett D. Blanchfield
Roberta A. Yard
E-1250 First National Bank Building
Saint Paul, MN 55101
Telephone:     (651) 287-2100
Facsimile:     (651) 287-2103
Email:        g.blanchfield@rwblawfirm.com

*Attorneys for Plaintiff and the Classes*